# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 23-0661V

|  |  |
|---|---|
| TERRY COOPER,<br><br>　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: September 10, 2025 |

*Jessica Olins*, Maglio Christopher & Toale, PA, Seattle, WA, for Petitioner.

*Mary Novakovic*, U.S. Department of Justice, Washington, DC, for Respondent.

### FINDINGS OF FACT AND RULING ON ENTITLEMENT[1]

On May 4, 2023, Terry Cooper filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") from an influenza ("flu") vaccine received on October 16, 2021. Petition at ¶1, 23. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons set forth below, I find that the onset of Petitioner's pain more likely than not occurred within 48 hours of his vaccination, and that he has otherwise satisfied

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

the requirements of a Table SIRVA claim. Therefore, Petitioner is entitled to compensation under the Vaccine Act.

## I.   Relevant Procedural History

On December 11, 2023, Respondent filed his Rule 4(c) Report contesting Petitioner's entitlement to compensation because "Petitioner's most contemporaneous medical records fail to show that the onset of his alleged shoulder pain was within forty-eight hours of his flu vaccination." Rule 4(c) Report at 4. Thereafter, Petitioner filed a Memorandum of Law in Support of Motion for Findings of Fact ("Memo.") on February 5, 2024. ECF No. 59. Respondent filed a response ("Resp.") on April 4, 2024 and Petitioner filed a reply ("Repl.") on April 10, 2024. ECF No. 24-25.

The matter is now ripe for adjudication.

## II.   Relevant Facts

### A. Medical Records

Petitioner received a flu vaccine in his left deltoid on October 16, 2021. Ex. 1 at 7. Two months later, on December 9, 2021, Petitioner saw his primary care provider ("PCP") for a routine examination. Ex. 3 at 23. During the visit, he reported left knee pain from "bumping the knee on his car about 4 weeks ago," for which he was advised to use over-the-counter medications. *Id*. He also reported that he had received both flu and Covid-19 vaccines, but there was no mention of shoulder pain. *Id*.

On April 11, 2022 (now nearly six months after vaccination), Petitioner returned to his PCP with left shoulder pain. Ex. 3 at 20. He reported that he had had pain "since [the] day of his flu vax administration at GMC in 10/21," and that "symptoms clearly began in the evening following that flu vax." *Id*. He mentioned that he was recently working in his garage and experienced an increase in discomfort. *Id*. He reported that he had used some NSAIDs and ice to treat his pain. *Id*. He was referred to physical therapy. *Id*.

Petitioner began physical therapy on April 13, 2022. Ex. 2 at 26. He reported having a "flu shot back in October and [having] pain in the shoulder ever since." *Id*. On exam, he had reduced range of motion and strength in the left shoulder. *Id*. at 27. He had nine physical therapy sessions through June 15, 2022. *Id*. at 7-24.

### B. Witness Testimony

Petitioner filed a declaration in support of his claim. Ex. 4. He stated that he "tr[ies] to avoid going to doctors if there is a way . . . to manage [his] problems on [his] own. *Id*. at ¶5. He remembers having pain in his shoulder on the day of his vaccination that he

believed was normal and would resolve on its own. *Id*. at ¶10. He further recalled that when his wife saw the bandage from his vaccination later that night, she was shocked by how high the Band-Aid was on [his] shoulder." *Id*. at ¶11.

Petitioner stated that the pain did not resolve, but instead, worsened. Ex. 4 at ¶12. He recalled doing internet research and speaking to friends and learning about SIRVA injuries. *Id*. at ¶13, 15. When his research revealed "that these injuries are usually treated with physical therapy," Petitioner "decided to create [his] own shoulder-focused exercise plan to do on my own at home." *Id*. at ¶16. He also used over-the-counter treatments and rest to manage his pain. *Id*. at ¶17.

Petitioner stated that he did not discuss his shoulder pain during his December 9, 2021 visit with his PCP because "[he] already knew that [he] would be prescribed physical therapy, and [he] wanted to avoid going to more in-office appointments" due to the risk of Covid-19. *Id*. at 14, 20. He stated that he made an appointment to address his shoulder pain in April 2022 because "the constant nag of [his shoulder pain] was unbearable" and "the rate of Covid infections in [his] local area were trending down." *Id*. at ¶23. He reported that his shoulder pain resolved in October 2022, after physical therapy and continuing his home exercises. *Id*. at ¶26-27.

Petitioner's wife, Linda Cooper, also filed a declaration. Ex. 8. Ms. Cooper states that she is "a retired nurse" and has "run several flu shot clinics." *Id*. at ¶2. She recalled that she saw the band-aid on Petitioner's arm the evening after her flu vaccination and "it was way too high." *Id*. She recalled that "it didn't bother him much then," but "during the night he was restless and couldn't get comfortable," and was worse the following day. *Id*. at ¶3.

Ms. Cooper recalled speaking to colleagues and learning that they had seen similar situations, and those patients were referred to physical therapy. Ex. 8 at ¶5. She recalled that at the time, she and Petitioner were "taking every measure to stay safe" from Covid-19. *Id*. at ¶7.

### III.     Applicable Legal Standards

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove by a preponderance of the evidence the matters required in the petition by Vaccine Act Section 11(c)(1). The Vaccine Act also requires that a petitioner demonstrate that "residual effects or complications" of a vaccine-related injury continued for more than six months. Vaccine Act §11(c)(1)(D)(i). A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. §13(a)(1)(A). "[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013V, 2019 WL 978825, at

\*4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at \*3 (Fed. Cl. Spec. Mstr. July 18, 2014).

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at \*20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at \*19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at \*5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering

4

such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs*., 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV.  Findings of Fact – Onset

Respondent argues that the 48-hour onset SIRVA requirement cannot be established. Resp. at 2-6. In support, he points to Petitioner's delay of almost six months before seeking treatment for his shoulder pain despite an intervening appointment with his PCP four months prior. *Id*. at 3. Respondent argues that "there are no objective findings from a physician documenting the presence of shoulder pain in the days immediately following vaccination." *Id*.

However, despite Respondent's characterization, there is support in the record that Petitioner experienced pain soon after his vaccination. When Petitioner first sought treatment on April 11, 2022, he reported that he had had pain "since [the] day of his flu vax administration at GMC in 10/21" and that "symptoms clearly began in the evening following that flu vax." Ex. 3 at 20. Petitioner again related the onset of his pain to his vaccination the previous October when he began physical therapy. Ex. 2 at 26. Further, Petitioner stated in his declaration that the pain he felt on the day of his vaccination never subsided – but persisted and worsened over time. Ex. 4 at ¶12. Similarly, Petitioner's wife recalled that Petitioner was restless through the night after his vaccination and worsened by the following day. Ex. 8 at ¶3. Although Respondent seems to argue that Petitioner must present a medical record from the first 48 hours after vaccination, such a standard is not only not required, but would be impossible for most SIRVA claimants. Petitioner's

statements, and those of his wife, are consistent with the available medical records regarding onset within 48 hours of vaccination.

Respondent also highlights that Petitioner had an in-person appointment with his PCP in December 2021, two months after his vaccination, during which he did not report shoulder pain. Resp. at 2-3. While Petitioner could have reported his shoulder pain to his PCP during this appointment, he has provided a reasonable explanation for why he did not. Petitioner states that he did research and consulted with friends and family, including his wife who is a retired nurse, and determined that he likely would have been prescribed physical therapy if he visited a doctor. Ex. 4 at ¶13, 15. He therefore did not mention the shoulder pain during his December 2021 appointment, because he believed he would be referred to in-person physical therapy and wanted to avoid frequent visits due to potential Covid-19 exposure. *Id*. at ¶19-20. Once Petitioner's pain reached a "constant nag" that was "almost unbearable" and Covid-19 infection rates declined, however, he sought formal treatment. Ex. 4 at ¶23.

Although Petitioner's delay in seeking treatment is highly relevant to the determination of damages (since it underscores that the SIRVA was mild enough to be tolerated for a considerable period of time), it does not, in light of the medical record evidence, defeat his proof of onset within 48 hours after his vaccination. Accordingly, I find there is preponderant evidence to establish the onset of Petitioner's pain occurred within 48 hours of vaccination.

### V.     Ruling on Entitlement

#### A.     *Requirements for Table SIRVA*

I have found that Petitioner has preponderantly established that his pain began within 48 hours of his vaccination. 42 C.F.R. § 100.3(c)(10)(ii). Respondent has not contested Petitioner's proof on the remaining elements of a Table SIRVA. *See* 42 C.F.R. § 100.3(c)(10)(i),(iii-iv). Accordingly, I find that Petitioner has provided preponderant evidence to establish that he suffered a Table SIRVA injury.

#### B.     *Additional Requirements for Entitlement*

Because Petitioner has satisfied the requirements of a Table SIRVA, he need not prove causation. Section 11(c)(1)(C). However, he must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The vaccine record shows that Petitioner received an influenza vaccination in his left deltoid on October 16, 2021. Ex. 1 at 7; Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) (requiring administration within the United States

or its territories). Additionally, Petitioner has stated that he has not filed any civil action or received any compensation for his vaccine-related injury, and there is no evidence to the contrary. Ex. 4 at ¶29; Section 11(c)(1)(E) (lack of prior civil award). Finally, Petitioner's medical records reveal that he suffered the residual effects of his vaccine injury for more than six months, and Respondent does not argue otherwise. *See e.g.*, Ex. 2; Section 11(c)(1)(D)(i) (statutory six-month requirement). Therefore, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

## Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case. A separate damages order will be issued.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master
